320

## MALONE v. ROBINSON et ux.
## JOHNSON v. ROBINSON et ux.—245 S. W. (2d) 628.

Middle Section.   June 29, 1951.

Petition for Certiorari denied by Supreme Court, December 14, 1951.

McAllen Foutch, of Smithville, for plaintiff.

Goodpasture, Carpenter & Dale, of Nashville, for defendant.

HOWELL, J.   These two suits were filed by the plaintiffs, C. R. Malone and John Johnson, against S. C. Robinson and his wife, Beulah Robinson, and arose out of a collision between an automobile of the plaintiff C. H. Malone, while being driven by him and in which the plaintiff John Johnson was riding, and the automobile of the defendant S. C. Robinson, which was being driven by the defendant Beulah Robinson who was accompanied by her husband S. C. Robinson at the time of the accident.

The first count in the declaration in the Malone case alleges among other things: ·

"The plaintiff C. H. Malone, sues the defendants, S. C. Robinson and wife Beulah Robinson, for the sum of Twenty-five Hundred ($2,500.00) Dollars damages, upon and because of the following facts to wit:

"The defendant, S. C. Robinson, is the husband of the defendant, Beulah Robinson, and the defendant, Beulah Robinson, was on or about the 25th day of August 1950, and prior thereto a member of the family and household of the defendant, S. C. Robinson.

"Prior to August 25, 1950 the defendant, S. C. Robinson, purchased an automobile for, among other things, the pleasure and comfort of his family, which automobile was a 1949 Model, with Motor No. GAA 671037.

"On or about August 25, 1950, and while operating the above described vehicle as a member of the family and household of the defendant, S. C. Robinson, and while operating said vehicle for the purpose for which it was purchased, or while operating said vehicle as the servant,

agent or employee of the defendant, S. C. Robinson, and for the use and benefit of said owner, and within the course and scope of his employment, and with the authority, consent and knowledge of said owner, the defendant, Beulah Robinson, on State Highway No. 26, about three and a half (3½) miles West of the City of Smithville, Tennessee, wrongfully, negligently, recklessly and unlawfully ran and drove said vehicle then and there under her physical control, upon and against plaintiff's automobile, thereby causing a collision between the two vehicles, said collision injuring and damaging plaintiff's automobile, including the body, chassis, frame, and numerous other parts and portions of said automobile, thereby entailing expenses, including wrecker service and loss of use of said automobile, all to plaintiff's damage Twenty-five Hundred ($2500.00) Dollars, for which he sues and demands a Jury to try the issues joined.''

There were in all eight counts in the declaration in the Malone case and four counts in the declaration in the Johnson case, for damages for personal injuries and property damages.

The defendants filed pleas of not guilty and the cases were heard together, before the Circuit Judge and a jury.

The two cars involved in the accident were proceeding in opposite directions on the highway between Smithville and Alexandria when the car of the defendant attempting to pass a vehicle loaded with hay suddenly appeared on plaintiffs' side of the road and a headon collision resulted.

At the close of the plaintiffs' proof in both cases, the defendants made motions for directed verdicts which were overruled by the Court. The defendants did not offer any evidence and relied upon their motions. The cases were submitted to the jury and verdicts rendered against both defendants. Upon the hearing of the mo-

tion for a new trial the trial Judge disallowed $250 to the plaintiff Malone for the loss of use of his car and reduced the amount awarded by the jury for damages to the car to $1,250 and for personal injuries to $5,000. The trial Judge also reduced the verdict of the jury in the Johnson case to $2,250. The motions were then overruled and the defendants by proper procedure have perfected appeals in error to this Court and have assigned errors.

The plaintiffs also excepted to the action of the trial Court in granting the remittiturs and have perfected appeals in error and assigned errors.

The principal insistence of the defendants is that there is no evidence that the Mrs. Robinson referred to as the driver of the car involved was the defendant Mrs. Beulah Robinson, the wife of the defendant, Dr. S. C. Robinson, and that there was no proof that the car registered in the name of Dr. S. C. Robinson was involved in the accident.

We have carefully examined the entire record with this insistence in mind.

The suits were instituted against Dr. S. C. Robinson and his wife Beulah Robinson, summons were served upon them and they employed counsel and filed pleas of not guilty and appeared at the trial, their counsel cross-examining the witnesses. The defendant Beulah Robinson was present during the trial before the Court and jury and was referred to as Mrs. Robinson.

In the cross-examination of the witness Venus Lattimore by the counsel for the defendants is the following:

"Q. Dr. Robinson was injured pretty badly, was he not? A. Well, they all looked like they was injured pretty bad.

"Q. And Mrs. Robinson was injured pretty badly?
A. They all looked like they was hurt pretty bad.

"Q. Did you talk to them any? A. No sir, I didn't talk to Mr. Robinson and them any for I got Mr. Malone and them out and somebody else got Mr. Robinson and them out, and Mrs. Robinson there, Mrs. Robinson was walking around.

"Q. Was Dr. Robinson unconscious, or was he walking around? A. Well, now, he wasn't walking around—he set down in a chair.

"Q. Was Mr. Johnson walking around, or where was he? A. No sir, he got out of the car and they laid him over there, they laid him down in the yard.

"Q. Did you see Mrs. Robinson talking to Mr. Johnson there? A. Yes sir.

"G. I am talking about Mrs. Robinson here now—you saw her talking to Mr. Johnson .there? A. Yes sir, I saw her. She come up there and Mr. Johnson was laying there in the yard and she asked him if he was hurt."

In the cross-examination of the witness Opal Pedigo is the following:

"Q. Did you all stop the truck you were riding in? A. Well, yes sir, we pulled up a little piece and got out of the road and stopped and we went back and stayed until the ambulance carried them all away.

"Q. Did you see the Sheriff? A. Yes, I hope—No, I didn't hope put him in the ambulance—I hope put Mr. Johnson and Dr. Robinson—I hope load them in, and some of the rest of them hope. Mrs. Robinson in.

"Q. Where were these cars sitting after the accident? A. Well, the Sheriff's car was might near against the fence, kind'r angled, you know, with the front towards the road, or in the road—I didn't notice so much about that now—and the best I can recollect Mr. Robinson's

car, the back end of it was towards the middle of the road and the front end out."

\* \* \* \* \* \*

"By Mr. Carpenter:

"Q. Mr. Pedigo, you said all the parties were injured —Dr. Robinson was badly injured? A. Yes sir, and Mrs. Robinson.

"Q. And Mrs. Robinson and both of the other gentleman? A. Yes sir, and the Sheriff and Mr. John Redd was injured."

In the examination of the plaintiff is the following:

"Q. When was the first time that you saw the Robinson automobile? A. When she pulled to my right hand side of the road."

\* \* \* \* \* \*

"Q. Now, with reference to your injuries, just go ahead and state to the Court and jury how you were injured. At the time this thing happened down there did it knock you unconscious or not. A. Yes, sir. About the only occasion that I remember down there is seeing Dr. Robinson in the road—I can recollect that. I was more or less addled, you know, but I remember seeing him down there in the road, and that is just about all I can remember seeing down there."

\* \* \* \* \* \*

"Q. Did you use the automobile in your business? A. I did.

"Q. As the Sheriff of this County? A. Yes sir.

"Q. You and Dr. Robinson and Mrs. Robinson are good friends, are you not? A. Yes sir."

In the testimony of W. H. Smith is the following:

"Q. All right. Where were they when they hit? A. Well, they were on the right—well, I will say the Sheriff's

car was on the right hand side of the road headed toward Nashville, and Dr. Robinson's car was on the left hand side of the road headed toward Smithville. They were at a sort of angle effect. In other words, the Sheriff's car was going down and Dr. Robinson's car was, you might say sidewise across the road; and then after I came back and looked at the car—I was asked to—both cars seemed to be about—the right front wheel of the Sheriff's car would be about a foot and a half off the asphalt, which was about as far as he could have gone, because there was a bank there, and Dr. Robinson's car his left front wheel was about the same distance off the road.

"Q. What part of the cars hit? A. The front end, both of them.

"Q. Who was driving the Robinson car? A. Mrs. Robinson.

"Q. Was Dr. Robinson riding with her in the car? A. Yes sir.

"Q. And who was driving the Sheriff's car? A. The Sheriff was.

"Q. And Mr. Johnson— A. He was riding with him."

\*　　\*　　\*　　\*　　\*　　\*

"Q. Did you then come back to the scene of the accident? A. Yes sir, and when I did they was all out of the cars by then, and I asked Dr. Robinson whether they wanted to go to Smithville or not, and I carried C. H., brought him on to town, and I came on in and told the doctor—"

Also in the testimony of the plaintiff C. H. Malone is the following:

"Q. After this accident occurred did you have occasion to see the car of Dr. Robinson or Mrs. Robinson?

A. I did up at the Ford garage somewhere, several days later.

"Q. What was the license number on that car? A. The license number was 66-446.

"Q. 66-446? A. Yes sir, S. C. Robinson, Liberty, Tennessee. That is the way it is on the books."

Sam Love, the County Court Clerk testified that a 49 model Chevrolet Sedan, listed in the name of Dr. S. C. Robinson was granted license No. 66-446 for 1950.

From the entire record and especially the testimony just referred to, we think there was ample evidence upon which the jury could find that the car involved in the accident with the car in which the plaintiffs were riding was the car of the defendant Dr. S. C. Robinson and that at the time of the accident it was being driven by his wife Mrs. Beulah Robinson with his consent and approval and on his business and he himself was riding in the car with her.

Code, Sections 2701 and 2702 are as follows:

"2701. Prima facie evidence of ownership of automobile and its use in the owner's business, when.—In all actions for injury to persons and/or to property caused by the negligent operation or use of any automobile, auto truck, motorcycle, or other motor propelled vehicle within this state, proof or ownership of such vehicle, shall be prima facie evidence that said vehicle at the time of the cause of action sued on was being operated and used with the authority, consent and knowledge of the owner in the very transaction out of which said injury or cause of action arose."

"2702. Registration is prima facie evidence of ownership; and proof that the operation was for the owner's benefit.—Proof of the registration of said motor propelled vehicle in the name of any person, shall be prima facie

evidence of ownership of said motor propelled vehicle by the person in whose name said vehicle is registered; and such proof of registration shall likewise be prima facie evidence that said vehicle was then and there being operated by the owner or by the owner's servant for the owner's use and benefit and within the course and scope of his employment.''

Considering the pleadings and proof and all the circumstances of the case we are satisfied that the judgments are against the right parties, the defendant Dr. S. C. Robinson, the registered owner of the car who was riding in it at the time of the accident and his wife the defendant Mrs. Beulah Robinson who was driving the car. There is no merit in these defenses.

In the case of Bryan v. Aetna Life Ins. Co., 174 Tenn. 602, 130 S. W. (2d) 85, 88, it is stated:

''The general rule is that it is sufficient, in a civil case depending on circumstantial evidence, for the party having the burden of proof to make out the more probable hypothesis and the evidence need not arise to that degree of certainty which will exclude every other reasonable conclusion. 23 C. J. 49; Jones, Com. on Evidence, (2 Ed.), Vol. 1, Section 12.

''Speaking of circumstantial evidence in a civil case, this court said in Marquet v. Aetna Insurance Company, 128 Tenn. 213, 225, 159 S. W. 733, L. R. A. 1915B, 149 [749], Ann. Cas. 1915B, 677:

'' 'Proof of the essential fact must be had, either direct or positive by witnesses who know the fact, or circumstantial by witnesses who know and testify to facts which tend to establish or prove the essential fact; and only when the circumstances are, in the judgment of the court or jury, such as usually or necessarily attend the essential fact are they sufficient in law to warrant a verdict, judg-

ment, or decree establishing as a fact that which has not been proved by direct or positive evidence.' "

There are two assignments of error directed at portions of the charge of the Court which are based principally upon the assumption that there was no evidence that the car involved in the accident was being driven by any member of the family of Dr. S. C. Robinson, and no proof that the Mrs. Robinson who was driving the car was the wife of the defendant S. C. Robinson or that the car was being driven on his business or in furtherance of any purpose of Dr. S. C. Robinson. Having held that the evidence was sufficient to justify the jury in finding that the Mrs. Robinson referred to was Mrs. Beulah Robinson, wife of Dr. S. C. Robinson and that she was driving the car of the defendant Dr. S. C. Robinson and accompanied by him at the time of the accident, these assignments are without merit.

The defendants have assigned errors based upon their insistence that the verdicts of the jury as modified by the trial Judge are excessive and the plaintiffs have assigned as error the action of the trial Judge in reducing the amounts awarded by the jury.

We have carefully considered all the evidence as to the injuries sustained and the amount of the damages and cannot say that the verdicts are excessive or that they are not sufficient. It is evident that the trial Judge gave careful consideration to the question of the amounts of the verdicts and we think the awards are fair and reach the merits of the cases.

It results that all the assignments of error are overruled and the judgments of the Circuit Court are affirmed.

The defendants will pay the costs of the appeal.

Affirmed.

Felts and Hickerson, JJ., concur.